157 So. 720

**SOUTHERN AMUSEMENT CO., Inc., v. CITY OF JENNINGS et al.**

**GAYLE v. REED, Tax Collector.**

**SOUTHERN AMUSEMENT CO. v. FUNDERBERG, City Tax Collector.**

**No. 33137.**

Oct. 29, 1934.

Rehearing Denied Nov. 26, 1934.

E. R. Kaufman, of Lake Charles, John B. Fournet and John T. Hood, Jr., both of Jennings, and Cline, Thompson & Lawes, of Lake Charles (E. R. Kaufman, of Lake Charles, of counsel), for appellant Southern Amusement Co., Inc.

E. R. Kaufman, of Lake Charles, for appellant Gayle.

Miller & Miller, of Jennings, for appellees City of Jennings et al.

McCoy, Moss & King, of Lake Charles, for appellee Reed.

Hawkins & Pickrel and John J. Robira, all of Lake Charles, for appellee Funderberg.

ODOM, Justice.

The plaintiff is a private corporation which owns property in the city of Jennings. Its real property was assessed for the year 1932 at $23,500, and its furniture and fixtures at $3,000. The assessments with the valuations as fixed were finally approved, and the tax rolls were filed in the recorder's office, turned over to, and filed by, the tax collecting authorities.

After the rolls had been received and filed by the sheriff and ex officio state and parish tax collector and the tax collector for the city of Jennings, the Louisiana tax commission ordered the valuations as shown on the rolls reduced as follows:

Real estate from $23,500 to $9,000;

Personal property from $3,000 to $1,000.

The state and parish tax collector accepted the reductions made and collected taxes accordingly. The tax collector for the city of Jennings refused to recognize the reductions thus made and signified his intention to collect the taxes due the city based on the valuations originally made. The plaintiff brought the present suit to restrain the city and its tax collector from collecting taxes on valuations in excess of those fixed by the tax commission.

The city and its tax collector filed exceptions of no cause and no right of action, which were sustained by the court, and plaintiff's suit was ordered dismissed. The court's ruling was based on the proposition that as a matter of law the Louisiana tax commission has no authority or power to change valuations fixed on the property of private corporations or individuals after the rolls are finally completed and approved by the assessing authorities and are delivered to and filed by those authorized to collect the taxes.

The law under which the Louisiana tax commission claims authority to make such changes in valuations as it did in this case is Act No. 120 of 1918, p. 193, the title of which reads as follows:

"An act to provide for the correction of assessments against public service corporations and other corporations that are valued and assessed directly by the Board of State Affairs."

Section 1 of the act reads as follows:

"Be it enacted by the General Assembly of the State of Louisiana, That the Board of

State Affairs be, and it is hereby, authorized and empowered to correct or change the assessment of any public service corporation or other property owner, when the assessment is made directly by said Board, in order to make said assessments conform to the true facts."

Section 3 of the act is as follows:

"Be it further enacted, etc., That whenever the Board of State Affairs shall make any change or correction in the assessment of any public service corporation or other corporation or individual whose property is directly valued and assessed by the said Board, it shall at the same time forward to the Auditor of Public Accounts of the State of Louisiana a copy of the instructions furnished to the assessor and tax collector."

Plaintiff carried the case by appeal to the Court of Appeal, First Circuit, and under the authority conferred by section 25, art. 7, of the Constitution of 1921, that court certified the case to this court, asking for instructions. After stating the issues involved, the court asks the following questions:

(1) "Has the Louisiana Tax Commission the right and power to reduce an assessment of a property owner and tax payer, regardless of whether such property owner or tax payer be a public service corporation, a private corporation, or an individual, if the tax roll has been filed and is in the hands of the local tax collecting authorities?"

(2) "Is Act 120 of 1918 unconstitutional in view of the fact that some of its provisions as appearing in the body of the act are broader than is indicated by its title?"

The assessment involved in this case was made for the year 1932. It is alleged that the

assessment of plaintiff's property was made by the assessor. Presumably the valuations appearing on the rolls were approved by the parish board of reviewers, created by Act No. 231 of 1920, and the Louisiana tax commission, otherwise the rolls would not have been filed with the tax collecting authorities.

On June 12, 1933, some months after the rolls had been filed in the clerk's office and placed in the hands of and filed by the tax collectors, the Louisiana tax commission made this change in the valuation of plaintiff's property by reducing it as set out above. The letter addressed to the sheriff and tax collector ordering the changes stated: "These reductions are made to place this property on the same assessment value as carried on the adjoining and other properties of a similar character in the city of Crowley, as evidenced by maps showing assessment values on file in this office."

Plaintiff's property is in the city of Jennings, Jefferson Davis parish. Crowley is another city in an adjoining parish. Manifestly the reduction was made for the sole purpose of equalizing values in the parish of Jefferson Davis.

The letter addressed to the sheriff is dated June 13, 1933; the first paragraph of which reads as follows:

"Under the provisions of Act 120 of 1918, you are hereby directed and instructed to make the following reductions on your rolls for the year 1932."

It is clear that, if the Louisiana tax commission (formerly board of state affairs) has authority under Act No. 120 of 1918 to reduce assessments, for the purpose of equalizing values in the parish, after the rolls are filed with

the tax collector, it may also increase values for the same purpose, because by section 1 of the act the board of state affairs (now the Louisiana tax commission) is "authorized and empowered to correct or change the assessment." If the Legislature intended, by the passage of this act, to authorize and empower the tax commission to change assessments as to values after the rolls are thus filed, it was intended that they might be changed by either raising or lowering values.

It is inconceivable that the Legislature intended by that act to authorize the tax commission to disregard and set at naught assessments of property authorized to be assessed by the assessor after such assessments have become final under existing laws. To hold that the Legislature did so intend would be to bring the act into hopeless conflict with all the statutes of the state adopted to regulate assessments of property and the equalizing of values for taxation purposes, as well as the settled jurisprudence of the state.

There is now, and there always has been, a date set on which assessments become final. That date is a deadline beyond which neither the assessing authorities nor the taxpayers can go for the purpose of changing values. Section 26, Act No. 85 of 1888, gave to all taxpayers the right to appear before a standing committee on assessments of the city of New Orleans, and in other parishes before the board of reviewers, and be heard "concerning the descriptions of the property listed and the valuation of the same as assessed." And it gave to such taxpayers the "right of testing the correctness of their assessments before the courts of justice." That section also says:

"But the action to test such correctness shall be instituted on or before the 1st day of November of the year in which the assessment is made."

In the case of Kansas City, Shreveport & G. Ry. Co. v. Davis, Tax Collector et al., 50 La. Ann. 1054, 23 So. 946, the tax assessor delivered the assessment roll to the tax collector on August 17, 1897. Suit was filed in March, 1898, to upset an assessment. Objection was made that the action was brought too late and the above-quoted portion of section 26 of Act No. 170 of 1898 was cited in support of the contention. The court held that the action was barred by the statute, citing among other cases Oteri v. Parker, Tax Collector, 42 La. Ann. 374, 7 So. 570.

Section 26, Act No. 170 of 1898, is almost, if not quite, identical with section 26, Act No. 85 of 1888. It also provides that the "action to test such correctness shall be instituted on or before the first day of November of the year in which the assessment is made." In the case of Orient Ins. Co. v. Board of Assessors et al., 124 La. 872, 50 So. 778, the court held that, even though an assessment was grossly excessive, and though the taxpayer made correct return, the court could grant him no relief if his action was not brought within the time specified by section 26, Act No. 170 of 1898. This case was carried to the United States Supreme Court by writ of error and affirmed. 221 U. S. 358, 31 S. Ct. 554, 55 L. Ed. 769.

In Constantin Refining Co. v. Day, Tax Collector, 147 La. 623, 85 So. 613, it was held that, in view of section 26, Act No. 170 of 1898, "a suit wherein overvaluation is complained of

is one in reduction of assessment, and can be entertained only if the taxpayer has made a return to the assessor and only if filed before the 1st of November in the year when the assessment is made," citing Orient Ins. Co. v. Board of Assessors, supra.

Act No. 140 of 1916 is an act to carry into effect articles 225 and 226 of the Constitution of 1913, and "to create a Board of State Affairs; to prescribe its powers, duties and compensation," etc. Sections 10, 12, 13, and 15 of said act were amended by Act No. 211 of 1918, pp. 389, 392, §§ 1, 2, 3, 4. Section 15 of the original act provides in the last paragraph "that all appeals to the State Board shall be determined on or before August 1st, and complaining interests shall have to November 1st to resort to the courts for remedy, after which they shall not have such right."

The last paragraph of section 15 of the act as amended reads as follows:

"Provided that all appeals to the State Board shall be determined on or before August 1st, and complaining interests shall have to November 1st to resort to the courts for remedy, after which they shall not have such right."

The only difference between the last clause of section 15 as originally enacted and the same clause of that section as amended is that under the original act all appeals to the board should be determined by August 1st, whereas under the amendment they must be determined by October 1st.

But both the original act and the amendment set November 1st as the last date on which complaining taxpayers may resort to the courts for relief. Thus it is seen that

in the acts of 1888, 1898, and 1918 November 1st is set as the date when assessments become final, and, according to the cases of Orient Ins. Co. v. Board of Assessors and Constantin Ref. Co. v. Day, Tax Collector, cited supra, this applies to valuations.

In State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46, 47, this court explained in detail not only the method of making and approving assessments but defined the powers of the tax commission relative thereto. We quote from the above case the following:

"According to section 2 of article 10 of the Constitution 1921, and the first and second paragraphs of section 10 of Act No. 140 of 1916, as amended by section 1 of Act No 211 of 1918, the Louisiana tax commission has the authority to fix and equalize the assessments or valuations of property for the purpose of collecting state taxes; and the local assessing authorities must adopt the assessments or valuations fixed by the tax commission, or a percentage thereof, not below 25 per cent., for the collection of municipal, parochial, or other local taxes. The method by which the assessments are made for the collection of all taxes, state and local, is that the assessor in each parish throughout the state, and the Board of Assessors for the parish of Orleans, prepares a tentative assessment roll, which, after being reviewed and revised by the parish board of equalization, according to the provisions of Act No. 231 of 1920, is submitted to the tax commission for approval. The tax commission may make such changes in the valuations as the commission sees fit before approving the rolls; and, when they have been thus approved by the tax commission

they become the assessments for the collection of state taxes, and form the basis on which the percentage (not below 25 per cent.) must be adopted for the collection of municipal and parochial and other local taxes."

For the purpose of special emphasis, we repeat the last-quoted portion of that decision:

"And, when they [the rolls] have been thus approved by the tax commission they become the assessments for the collection of state taxes, and form the basis on which the percentage (not below 25 per cent.) must be adopted for the collection of municipal and parochial and other local taxes."

The pertinent point is that all the acts, including the ones under which the Louisiana tax commission operates, prescribe a date on which assessments become final. After that date, the tax commission having had the final say as to valuations (subject to review by the courts), and having finally reviewed and approved the rolls, the assessments become "the assessments" for the collection of taxes. The rolls are final as to all parties. Even though the valuations be "grossly excessive," said the court in Constantin Refining Co. v. Day, Tax Collector, supra, the courts can grant the taxpayer no relief unless his suit is brought within the time prescribed in the statute.

[ ] It follows necessarily that, once the tax commission has approved the rolls and permitted them to be filed in the recorder's office, by virtue of which filing the taxes assessed become a lien and mortgage on the property assessed, after December 31 (section 32, Act No. 170 of 1898), and after permitting them to be filed with the tax collector, by vir-

tue of which filing he is authorized to proceed with the collection of the taxes, said tax commission cannot thereafter, under the guise of equalizing assessments, raise or lower valuations at will without notice either to the taxpayers or the collecting authorities. Even the courts are forbidden to do that.

Aside from the right of the taxpayer to resort to the courts for a review of his assessment within the time limit prescribed, the tax commission is the final arbiter as to values. But its time to speak is before, and not after, the rolls are filed. Under section 15, Act No. 140 of 1916, as amended by Act No. 211 of 1918, § 4, it must determine all appeals brought before it on or before October 1st. After that date the rolls are returned to the assessor to be by him amended and completed as to values in accordance with the views of the Tax Commission.

The Legislature did not intend by enacting Act No. 120 of 1918 to authorize and empower the tax commission to go behind and upset all the proceedings had with reference to the assessment of property authorized to be assessed by the assessors, reviewed by the parish boards of reviewers, and finally approved by itself; in other words, disrupt at will and without notice all the tax rolls of the state.

Act No. 120 of 1918 is presumed to have some meaning. As to what it means, the answer is that it means what it says, and it says in section 1 that the board of state affairs (now the Louisiana tax commission) is authorized to correct or change the assessment of "public service corporation or other property owner, when the assessment is made *directly* by said Board, *in order to make said*

*assessments conform to the true facts."* (Italics ours.)

Under the Constitution and statutes, certain property is assessed and valued directly by said board and with which neither the assessor nor the parish boards of reviewers have anything to do. Other property is assessed by the assessors with the co-operation and assistance of the parish boards of reviewers and the state board.

Judge Jerry Cline, who decided this case, and who died shortly thereafter, wrote a most able and exhaustive opinion in support of his conclusions. He pointed out that the Constitution of 1921 (section 2, art. 10) retained the board of state affairs under the name "Louisiana Tax Commission," and provided that it should "exercise such authority in respect to assessment, taxation, the State budget, and other matters as now is, or hereafter may be, prescribed by law," and that under the laws then in effect the state board was authorized, and it was its duty, to assess *directly* and without the intervention or assistance of either the assessors or the parish boards all property of public service corporations, such as railroads, telegraph and telephone companies, sleeping car and express companies.

As to the purpose and meaning of Act No. 120 of 1918, he said:

"Evidently it was not intended to apply to all assessments, for it specifies a certain class, and therefore excludes all that are not of that class. It assumes the existence of the class specified, and at least one other class to which its provisions are not intended to apply. It has already been seen that there are two classes of property, with relation to the method of valuation and assessment for taxation. One class is valued and assessed exclusively by the State Board. The other class is valued and assessed by the aid or intervention of local assessors and boards of review. 'Directly assessed by the State Tax Commission' can not have been intended to apply to other than property assessed by it without the intervention of other authority. This interpretation excludes the plaintiff's property from the terms of the act and supports the exception of no right or cause of action." We concur in this view.

We have not overlooked the case of State ex rel. Jefferson Island Salt Mining Co. v. Landry, Sheriff and Tax Collector, reported in 170 La. 251, 127 So. 618, where it was held, according to the first paragraph of the syllabus, that "under statutes and Constitution, tax commission could reduce assessment after roll was filed and direct tax collector to collect taxes as reduced (Act No. 140 of 1916; Act No. 120 of 1918, §§ 2, 4; Const. 1921, art. 10, § 2)."

The record in that case shows that the reduction made by the tax commission was purely a consent matter between all parties concerned. We have before us a copy of the record, including the letter of the tax commission to the sheriff and ex officio tax collector ordering him to make the reduction on his books. After stating that the assessment is ordered reduced from $493,500 to $275,700, the letter continues as follows:

"Our reason for ordering this reduction is to put the assessment of the Jefferson Island Salt Company Inc. on the basis of a compromise agreement entered into between this

commission, the attorney general and the tax payer, through its attorney, Mr. Walter J. Burke, and which compromise agreement was adopted by the other mine owners of Iberia Parish and their assessment for the year 1928 fixed accordingly."

This letter is dated December 20, 1928, and the assessment was for that year, so that the order for the reduction must have been made within a short time after the roll was filed. There is nothing in the record to show what proceeding had previously been taken by the tax payer to have its assessment reduced. But presumably some had been taken, as the reduction was made to carry into effect a compromise agreed to by all parties, including the taxpayer and other mine owners of the parish. Under such circumstances, it is conceivable that the tax commission was within legal bounds in making the reduction in that case.

With these facts before the court, and especially in view of the fact that the main defense made by the tax collector was that he had not been authorized by the state auditor to make the change, without which authorization he said he could not change the rolls, the conclusion reached by it was probably correct. The case, therefore, does not support the general proposition that the Louisiana tax commission is vested with power and authority to change without notice assessments of the property of private corporations after the rolls have been put into the hands of the tax collecting authorities and filed by them. No case is authority on any point except that which was presented to the court and that which it decides.

Our answer to the first question asked by the Court of Appeal is "No".

We are asked if Act No. 120 of 1918 is constitutional. This question was neither raised by the pleadings nor decided by the lower court. For this reason, we find it unnecessary to answer question No. 2.

The Court of Appeal, First Circuit, is instructed to render judgment affirming the judgment of the district court.

The same answer given in this case and the same instructions given apply to the two other cases sent up by the court, as the identical issue is involved in each, and a like judgment was rendered in the district court. These cases are Arthur P. Gayle v. H. A. Reed, Tax Collector, et al., and Southern Amusement Co. v. J. H. Funderberg, City Tax Collector, both appealed from the parish of Calcasieu.