FOURNET, Justice.
 

 The Louisiana Central Lumber Company instituted this suit against the tax collect- or, the assessor, and the school board for the Parish of Catahoula, seeking to have declared null and void certain supplemental assessments by virtue of which a special tax of 3% mills was levied, assessed, and extended against its property in School District No. 10, and to enjoin the collection of the tax.
 

 For its cause of action plaintiff alleged, •in substance, that (a) the said tax was authorized by the property taxpayers to be levied and collected only for the calendar year of 1935 and not in any subsequent year; (b) that the said special tax was not levied in and for the year 1936 and the assessor was not instructed or authorized to make the supplemental assessment in 1936; and (c) that the said tax could not be retroactively levied, assessed, and extended because there is no authority in law for the back' assessment of a tax not levied, assessed, or extended in and for the year for which it was authorized, and that, therefore, the so-called supplemental assessment was not made in the manner and form required by law.
 

 The defendant, the Catahoula Parish School Board, pleaded (1) the prescription of 5 days; (2) the prescription of 60 days and to the jurisdiction of the court; and (3) exceptions of no right or cause of action, all of which were overruled. The defendant then answered and the case was tried on the merits on an agreed statement of facts and there was judgment dismissing plaintiff’s suit at its cost.
 

 The facts of the case are that on July 2, 1935, the Catahoula Parish School Board, under the authority of Act 256 of 1910, as amended, called an election for the purpose of levying a 3% mills special tax on all of the taxable property in School District No. 10 “* * * for a period of one (1) year, beginning with the year 1935, the proceeds of said tax to be used for the purpose of building and equipping or equipping a school building in the said District.” On August 16, 1935, the school board, pursuant to its resolution of July 2, 1935, canvassed the returns of the election and adopted an ordinance promulgating the results thereof and levying the tax authorized thereby, which ordinance was duly published in the official newspaper of
 
 *475
 
 Catahoula Parish and the procés verbal of promulgation and levy was filed with the clerk of court. The assessor, however, in preparing the regular roll for the year 1935, failed to extend thereon the special 3% mills tax against the taxable property in School District No. 10. This error or omission was not discovered until the following March of the year 1936, and after plaintiff had paid all of its tax according to the regular roll, but before the tax collector had closed his _ tax collections for the year 1935. The assessor, acting under the authority of section 12 of Act 170 of 1898, as amended by Act 69 of 1908, made a supplementary tax roll consisting of fourteen loose leaves in the same form as that of the original assessment, attached together in pamphlet form, covering the taxable property in School District No. 10, on which was extended the 3% mills tax on the original assessed valuation. This supplemental roll was filed'with the clerk of court, the tax collector, and the State Tax Commission about the 27th of March, 1936, and notice thereof was made by publication in the official parish newspaper.
 

 It is admitted that plaintiff was not given notice by mail, but that plaintiff did, in due time, file a protest to this supplemental roll with the assessor and that the same was not formally rejected as required by section 12 of Act 170 of 1898, as amended by Act 69 of 1908.
 

 The plea of prescription of 5 days, based upon the above section of the statute, is without merit and was properly overruled by the trial judge,, because the protest was not formally rejected by the assessor. Franklin v. Police Jury, 169 La. 541, 125 So. 587.
 

 The plea of prescription of 60 days and to the jurisdiction of the court is based on the provisions of section 17 of Act 256 of 1910 and article 14, section 14 of the Constitution of 1921, which deal with the prescriptive time after which no one would have the right to contest the regularity, formality, or legality of a special tax election for any cause whatever, and, consequently, does not apply to the controversy here presented and was properly overruled by the trial judge.
 

 The exceptions of no right or cause of action are so related to and interwoven with the merits of the case that a decision on the exceptions necessarily involves a discussion of the latter and for that reason we will pass on the exceptions just as if they had been referred to the merits.
 

 The trial judge was of the opinion that the “* * * failure of the assessor to give this Plaintiff written notice of the filing of this supplemental assessment roll would not of itself be cause to invalidate the roll where, as in the present case, this Plaintiff
 
 did in due time file its protest thereto.”
 
 (Italics ours.) In this conclusion we concur, because it is evident by a mere reading of section 12 that the purpose of the notice required by the act to be given of the “* * * completion of said assessment rolls, and that it is exposed for examination in the office of the assessor * * *” is to give the tax debtor an opportunity to file such protest or complaint that he may have to the as
 
 *477
 
 sessment and if the ruling of the assessor thereon bp adverse, to give him an opportunity within five days from such decision to appeal to the courts for relief.
 

 It is plaintiff’s contention (1) that this tax “* * * having been voted for the year 1935 and not haying been assessed and collected in that .year, can not be levied and assessed in a subsequent year, * * *” and that, if it be wrong in that contention (2) that “* * * Section 12 of Act 170 of 1898 as amended by Act 69 of 1908 does not provide for the back assessment of a tax erroneously omitted from the regular roll.”
 

 It is perfectly evident from a reading of the ordinance of the school board that the tax levied was to be for one year only, the calendar year of 1935, and we need cite no authority to hold that an effort to collect said tax for any other than the calendar year of 1935 would be without authority.
 

 This leaves for our consideration, therefore, the question of whether section 12 of Act 170 of 1898, as amended, provides for the back assessment of a tax erroneously omitted from the regular roll. The pertinent part of the section provides that if “* * * any tract or lot of land, or other property shall be omitted in the assessment of any year, or series of years, or in any way erroneously assessed, the same, when discovered, shall be assessed by the assessor, or tax collector for the, whole period of which the same may have been omitted or improperly assessed, and shall be subject to the State, parish, municipal and levee taxes, which have been, or may hereafter be assessed against said property * *
 

 In a supplemental brief filed by counsel for the plaintiff it is argued that the “* * term ‘assessment’ includes the listing of property by description sufficient to identify it and the estimated or appraised value thereof as fixed by the Assessor and Tax Commission. It does not mean or include the levy, calculation or extension of the tax or taxes that may be levied, assessed or extended against such listed and valued property.” In support of its contention plaintiff has cited the cases of Delta Land Company v. Police Jury, 169 La. 537, 125 So. 585; Whited v. Louisiana Tax Commission, 178 La. 877, 152 So. 552; Elks Theater v. New Iberia, 143 La. 162, 78 So. 433; and the Southern Amusement Company v. Funderberg, Tax Collector, 180 La. 800, 157 So. 720.
 

 It is stated in Corpus Juris, vol. 61, par. 758, at pages 618, 619, that “* * * * the term [assessment] may be used as meaning the whole statutory method of imposing the tax, embracing all the proceedings for raising money by taxation from their inception to their conclusion, and including the calculation of the rate and amount of the tax, as well as including the completed tax list, and the final step in the process of taxation which fixes a definite and enforceable liability on persons and property for the amount of the tax.” (Brackets ours.)
 

 In Corpus Juris Secundum, vol. 6, Assessment, at pages 1026, 1027, on the subject matter “local or special assessment,” we find the statement that while
 
 *479
 
 “* * * an ‘assessment,’ in this connecT tion, is distinct from a ‘tax’ and ‘taxation,’ yet both have their origin in the power of taxation; and hence ^assessment,’ in this sense, has been defined or described as being a species of tax; a charge in the nature of tax levied to pay the whole or part of the cost of local improvements, and assessed upon the various parcels of property especially benefited thereby * *
 

 Act 170 of 1898, as amended, is an act providing an annual revenue for the State of Louisiana and its subdivisions by the levy of annual taxes and that portion of the act “ * * * prescribing the method of assessing and collecting the same, * *” is complementary and secondary to the primary object. In other words, it is simply the machinery which the lawmakers have set up for the uniform and equitable enforcement or levy of the primary object, — to obtain revenue.
 

 We are of the opinion that plaintiff’s property within the purview and intendment of Act 170 of 1898, as amended, was “erroneously assessed” in that the regular roll failed to include the 3% mills tax in controversy, and that when this omission was discovered “the assessor, or tax collector”'was authorized under section 12 of the act, as amended, to assess its (plaintiff’s) property for the period for which the same was omitted or improperly assessed.
 

 We have carefully reviewed the several authorities counsel has referred to and do not find that they are apposite or pertinent to the issues raised in the case at bar.
 

 For the reasons assigned, the judgment of the lower court is affirmed.
 

 ODOM, J., takes no part; not having heard the argument.