Dear Mr. Demoruelle:
For clarity and benefit of the reader, the factual information provided in your request letter will be reproduced herein, as follows:
 The town of Kinder was created by proclamation signed by Governor William Heard on June 1, 1903. The proclamation was issued following an election and pursuant to Act No. 136 adopted by the legislature in 1898 [sic]. The proclamation,, set out the corporate limits of the town of Kinder with metes and bounds as shown therein. The town was situated in Calcasieu Parish at the time of its creation.
 Allen Parish was created out of Calcasieu Parish and became a separate entity on January 1, 1913. However, the proclamation describing the boundaries of the town was not recorded in the public records of Allen Parish until August 1968.
 For many years the corporate limits of the town were assumed to be those limits shown in a map resulting from a survey by Sun Oil Company in 1955. These limits were substantially smaller than the limits in the proclamation. Therefore, the Mayor and Board of Aldermen in the town assumed that the corporate limits were those set out in the 1955 Sun Oil map rather than the larger area as per the proclamation by Governor Heard. Therefore, for the purposes for this correspondence I shall refer to the smaller corporate limits as "Old Town" [for our reference we add, 1955 map] and the larger corporate as "New Town" [for our reference we add, 1903 proclamation].
 The population of Old Town [1955 map] as of a July 1, 2003 is 2,276. The population of New Town [1903 proclamation] exceeds 2,500. Some of the citizens residing in the New Town [1903 proclamation] do not want to be in the corporate limits of Kinder and the Mayor and Board of Aldermen have asked that I request an opinion from you.
 References made to La R.S. 33:251 et seq., regarding dissolution of a municipality. I am asking from you your opinion regarding the following questions:
 1. Can municipality with a population in excess of 2,500 be dissolved?
 2. What population number is to be used: the population of Old Town [1955 map] or New Town [1903 proclamation]?
 3. Can a municipality partially dissolve, that is dissolve New Town [1903 proclamation] and keep Old Town [1955 map], or does the entire municipality have to dissolve if dissolution is desired?
 4. If the municipality is prohibited from dissolving totally or partially, can the Legislature adopt legislation partially dissolving the municipality by defining its corporate limits as Old Town [1955 map] and eliminating New Town [1903 proclamation]?
 Additionally, your opinion is requested regarding the obligation of the Mayor and Board of Aldermen to request of the assessor that the corporate limits as described in the proclamation (New Town) be added to the tax roll of the town in order to assess, levy and collect municipal property taxes. Also, until such time as the correct corporate limits of the town are defined, does the municipality have an obligation to provide municipal police services in New Town?
In response to your first question, in the case of Bush v.Traigle, 299 So.2d 843, 844 (La.App. 2 Cir. 1974), the court stated that "the law of this state provides three ways in which a municipality ceases to exist:
 1. By the provisions of R.S. 33:231, where the population drops below 100 and the governor proclaims the dissolution.
2. By an act of the legislature.
 3. By petition and election under the provisions of R.S. 33:251, in municipalities of less than 2,500 inhabitants."
You have stated that the population of new town [1903 proclamation] exceeds 2,500 inhabitants, but that the population of old town [1955 map] has only 2,276 inhabitants. Since it is our opinion that the population to be used for the town is that of "new town" [1903 proclamation], as answered in your second question discussed below, and since this population exceeds 2,500, the provisions of law providing for dissolution in R.S. 33:231 or 251 would not apply. And the legislature is bound by Article VI, Section 2 of the 1974 Constitution, which provides:
 The legislature shall provide by general law for the incorporation, consolidation, merger, and government of municipalities. No local or special law shall create a municipal corporation or amend, modify, or repeal a municipal charter. However, a special legislative charter existing on the effective date of this constitution may be amended, modified, or repealed by local or special law.
The legislature has provided for all municipalities to be governed by a mayor-board of aldermen form of government, called the Lawrason Act, R.S. 33:321 et seq., except for those municipalities governed by a special legislative charter, a home rule charter, a commission plan, or a commission and city manager plan. The town of Kinder was incorporated under and is now governed by the Lawrason Act, which general law does not provide for the dissolution of a municipality governed there under, and as stated above, the general law in R.S. 33:231 and 251 is not applicable. Therefore, it is our opinion that a municipality with a population in excess of 2,500 and operating under the Lawrason Act may not be dissolved under the present law. In the alternative, however, the Town of Kinder may consider contracting the corporate limits pursuant to LSA-R.S.33:171 et seq. Additionally, you may consider legislative action for a general law, as opposed to a local or specific law as quoted above, with regard to the repeal of a municipal charter.
Your second question asks which population is to be used for the Town of Kinder, either the population in the proclamation of 1903 or the population in the 1955 map. Louisiana Acts 1898, No. 136, Section 11, provided for a petition of two-thirds of the electors of any hamlet or unincorporated village to be presented to the governor, which set forth "[t]he metes and bounds of their hamlet or village, stating the number of inhabitants therein, and praying incorporation ". According to Governor Heard's proclamation of 1903, two-thirds of the qualified voters of the unincorporated Village of Kinder presented a petition to the governor setting forth the metes and bounds of the village, the number of inhabitants and praying for incorporation. We reviewed the proclamation and find that the metes and bounds of the municipality of Kinder were specifically set forth therein.
You also provided our office with an Executive Department document dated March 4, 1911, wherein the Village of Kinder was declared a town pursuant to Louisiana Acts 1898, No. 136, due to its population of One Thousand and Eighty Eight. This act further provided that "[t]he officers of each [municipality] shall demand such proclamation [assigning the municipality to its proper class] and upon its receipt shall cause it to be recorded in the minute book of the municipality and the same shall determine its class." Sec. 41. Finally, the act provides:
 [t]he limits and boundaries of the existing cities, towns and villages shall remain as now established until altered as hereinafter provided. To enlarge or contract the boundaries of a city, town or village it shall be necessary for the municipal authorities to pass an ordinance defining with certainty the territory which it is proposed to include in or to exclude from the corporate limits and also defining the entire boundary as changed.
Sec. 3, Louisiana Acts 1898, No. 136.
In the case of Hider v. Town of Lake Providence, 91 So.2d 387, 391
(La.App. 2 Cir. 1957), the court stated, "where the Legislature delegates its power to municipal authorities to enlarge or diminish territory, strict compliance with the procedure prescribed in the statute is essential to a valid alteration of the municipality's corporate limits." It is clear that the town's limits were established according to law in 1903. We have no information, however, as to the legal authority of the 1955 map, or the purpose and use of the map. Thus, it is our opinion that unless the town contracted the boundaries as provided for in Act136 of 1898, or as presently provided for in LSA-R.S. 33:171 etseq., the boundaries of the Town of Kinder are those set forth in the 1903 proclamation.
In response to your third question where you ask if a municipality can partially dissolve, such as to dissolve the new town [1903 proclamation] and keep the old town [1955 map], we defer to our response to your first question where we concluded that the Town of Kinder's population is too great for a dissolution under present law. However, as discussed herein, the Town of Kinder can avail itself of the provisions of law for the contraction of boundaries under LSA-R.S. 33:171 et seq.
In response to your fourth question where you ask if the legislature can adopt legislation partially dissolving the municipality by defining its corporate limits as old town [1955 map] and eliminating new town [1903 proclamation], we are of the opinion that this outcome can presently be accomplished by the procedures on contracting boundaries, pursuant to LSA-R.S. 33:171et seq. However, this question should be addressed to your local area representative and senator for their review and response.
In response to your fifth question where you ask whether it is the obligation of the Mayor and Board of Aldermen to request of the assessor that the corporate limits as described in the 1903 proclamation be added to the tax roll of the town in order to asses, levy and collect municipal property taxes, we refer you to LSA- R.S. 47:1966, which provides in part:
 A. If any tract or lot of land or other property shall be omitted in the assessment of any year or series of years, or in any way erroneously assessed, it, when discovered, shall be assessed by the assessor or tax collector for the whole period during which the property may have been omitted or improperly assessed, and shall be subject to the state, parish, municipal, and levee taxes, which have been or may hereafter be assessed against the property in accordance with law. No back taxes for more than three years shall be assessed against omitted or improperly assessed property. Assessments of omitted or improperly assessed property shall appear upon a supplemental roll and be filed in the same manner as regular tax rolls. A notice by mail shall be given that the assessment roll is completed, and that it is exposed for examination in the office of the assessor whether the tax is on movable or immovable property, and that ten days are allowed the parties to make to the assessors any protest they may wish to urge against the assessment; In case there is no protest the assessment without any further requisite or formality of any kind shall be final and conclusive on the parties assessed. In the event of any such protest, the decision of the assessors thereon shall be promptly made and be final; the assessment without further formality and requisite of any kind shall be binding and conclusive on the parties assessed; however the parties assessed can appeal to the courts within five days from the decision of the assessor on the protest, which decision shall be deemed notice, and the delay of five days shall begin from the day of entry by the assessors of the words `appeal rejected' on the supplemental roll. [Emphasis added].
We refer you to the cases of Louisiana Cent. Lumber Co., vs.Catahoula Parish School Board, 185 So. 885 (La. 1938) and ParkEsplanade Limited Partnership v. Williams, 577 So.2d 1028
(La.App. 4 Cir. 1991), where the courts have recognized the retroactive assessment of property omitted or erroneously assessed.
In response to your sixth question where you ask whether the municipality has an obligation to provide municipal police services in the new town [1903 proclamation], we refer you to the present provisions of the Lawrason Act, R.S. 33:423, which provide for the duties of the marshal/chief of police. Said duties include enforcement of all ordinances within the municipality. As we are of the opinion that the Town of Kinder is composed of that territory described in the 1903 proclamation, absent an ordinance providing otherwise, the police services of the municipality would extend to the boundaries set forth in the proclamation. The town may want to consider the option of a cooperative endeavor with the sheriff for police services in the area in question, pursuant to LSA-Const. Art. 7, Sec. 14(C).
Finally, you ask whether the police jury and the water district must discontinue collection of ad valorem taxes levied by those entities. We enclose herein for your information and review a copy of Attorney General Opinion No. 00-371. This opinion gives an in depth review of waterworks districts. Basically, waterworks districts are authorized by law to issue bonds and levy taxes. LSA-R.S. 33:3821 and 39:551. They are required to do so by majority vote of the electorate. LSA-R.S. 18:1283. Likewise, the parish police jury is authorized to levy ad valorem taxes upon majority vote of the electorate. LSA-Const. Art. VI, Sec. 26 (1974). Additionally, the board of aldermen may levy ad valorem taxes pursuant to the constitution, Art. VI, Sec. 27, upon majority vote of the electorate.
From your questions herein, it appears that said taxes have only been approved by a majority of those voters living in the smaller boundaries, as set out in the 1955 Sun Oil map. Therefore, it is our opinion that these taxes could not be collected in the larger area, as set out in the 1903 proclamation, without a majority vote of the electorate in that area.
LSA-R.S. 33:3811 authorizes a police jury to divide their parish into one or more waterworks districts; repeal any ordinance creating a waterworks district; or abolish a waterworks district in its entirety or change or alter its boundaries. However, provided "[t]hat neither the existence nor the territorial boundaries of a waterworks district shall be changed in any manner which shall impair any obligations that may have been incurred by the waterworks district during the period of its existence." Id. The details and ramifications of such procedures should be discussed with your bond counsel, as we can only assume that the present waterworks district has outstanding bonds.
Hoping that this opinion has fully addressed all of your questions and concerns, we remain
 Yours very truly, CHARLES C. FOTI, JR. ATTORNEY GENERAL
_________________________________
 ANGIE ROGERS LAPLACE Assistant Attorney General
ARL;mjb
OPINION NUMBER 00-371
October 20, 2000
46 Fees and Costs 84 Parishes 107-A Special Districts 172-A Water Districts
R.S. 33:3811, et seq. and 33:3881, et seq.
General discussion concerning the rights of waterworks and sewerage districts to make improvements and levy assessments against the property owners benefiting therefrom. Also discusses the rights of the property owners to contest this action.
Honorable Michael G. "Mike" Strain, DVM House of Representative, District 74 19607 Highway 36 Covington, Louisiana 70433